**THE CAPE MICHAEL.**

**THE NEW YORK CENTRAL NO. 18.**

**M. & J. TRACY, Inc., v. THE NEW YORK CENTRAL NO. 18 et al.**

District Court, S. D. New York.

April 3, 1942.

Henry W. Baird, of New York City (Macklin, Brown, Lenahan & Speer and

Leo Hanan, all of New York City, of counsel), for libellant.

Clive C. Handy, of New York City (Gerald Dwyer, of New York City, of counsel), for respondent and claimant.

COXE, District Judge.

This suit grows out of a collision in the East River, a short distance below Belmont Island, between the coal barge "Cape Michael", belonging to the libellant, and a car float in tow of the tug "New York Central No. 18". The collision occurred at about 6:45 P. M. on March 4, 1941. The tide at the time was ebb, with a current of about 2 knots; the weather was clear, and there was a strong wind blowing from the northwest.

The coal barge "Cape Michael" was light and in tow on the port side of the tug "Ann Marie Tracy"; both tug and tow were bound from East 40th Street, Manhattan, to a dock at the mouth of Newtown Creek on the Brooklyn side of the river. The tug "New York Central No. 18" was backing out into the river from the annex dock of the Long Island railroad at Long Island City with two loaded car floats in tow, one on each side, the No. 49 being on her port side, and the No. 43 on her starboard side; the purpose was to proceed down the river with the two car floats in tow after getting clear of the dock.

The Tracy tug and tow, after leaving East 40th Street, first headed a little up the river against the ebb tide, and then came around to proceed down the river to the dock at the mouth of Newtown Creek. A Sound steamer was at the time coming up the river near the Manhattan shore, and the Tracy tug shaped her course to pass this steamer to starboard. When the Tracy tug and tow were about in the middle of the river and headed down stream, Captain Murphy saw that the "New York Central No. 18" and the two car floats were continuing to back across the river; he estimated that they were then about 600 feet away, and he blew a one whistle signal and an alarm, and stopped his engines. This signal was repeated when it was not answered, and "The New York Central No. 18" followed with an alarm. Captain Murphy thereupon blew an alarm, and started his engines in an effort to clear the car floats. The stern of the No. 49, which was the port car float in the New York Central tow, struck the port side of the "Cape Michael" about 20 feet from the stern,

doing considerable damage. The witnesses for the libellant insisted that the New York Central car floats were still backing across the river when the collision occurred.

The story told by the New York Central witnesses was not essentially different from that told by the Tracy witnesses. After the two car floats were made fast on either side of the tug, Captain Kroljic blew one long slip whistle, and commenced to back out into the river. A Lehigh Valley tug with a car float on her port side was proceeding up the river near the Long Island shore, and this tug and tow held back to allow the New York Central tug and tow to come out. Captain Kroljic testified that he noticed the Sound steamer coming up the river, and after exchanging two whistle signals with her, placed his engines full speed ahead, and started to swing downstream. He did not see the Tracy tug and tow until they were about 30 feet off, and heard only the one whistle signals from the Tracy tug. He insisted that the New York Central tow had no stern way at the time of the collision. He also said that he backed about 1200 feet straight out into the river.

First: The tug "New York Central No. 18" was at fault for not having a proper lookout. The testimony was that there was a floatman, LeClair, on the stern of the No. 49, but LeClair said that he was engaged in coiling up his lines and was not acting as a lookout. It was also shown that there was a deck hand, Olsen, on the stern of the No. 18, but he, too, was looking after the lines and paying no attention to traffic in the river. I think it is perfectly clear not only from the testimony of these two witnesses, but from that of Captain Kroljic, that no attention was given to what was happening in the rear of the tow until too late.

Second: The tug "New York Central No. 18" was also at fault for backing the car float No. 49 into the "Cape Michael". I think the New York Central tow had some stern way at the time of the collision. In the first place, the engines were at full speed when the tug started backing, and there was hardly time enough to run off the stern way during the short interval after the engines were reversed. Furthermore it seems reasonably clear that the tow backed out into the river more than the 1,200 feet of Captain Kroljic's estimate, for the Lehigh Valley tow pushed in between the New York Central tow and the

Long Island shore, indicating that Captain Kroljic left considerable space for the Lehigh Valley tow to maneuver. Moreover, it is difficult to explain the contact with the "Cape Michael" on any other theory than that the car float No. 49 had stern way at the time of the collision.

Third: I make the following additional findings: (1) The "Cape Michael" had proper bow and stern lights; (2) The tug "Ann Marie Tracy" had only one staff light actually lighted, but the failure to have two staff lights was not a contributing cause of the collision; (3) The port stern corner of the car float No. 49, and not the starboard stern corner, came in contact with the port side of the "Cape Michael"; (4) The Tracy tug and tow were at the time of the collision about in the middle of the channel, headed almost straight down the river, in order to round to below Newtown Creek and come up to the dock there against the tide; (5) The Tracy tug was not at fault for failing to reverse after sounding the alarm signals.

I conclude that the tug "New York Central No. 18" was solely at fault for the collision, and there may be a decree accordingly for the libellant for full damages, with costs.